BELL et al. v. JUDSON et al.

(Court of Civil Appeals of Texas. Galveston. Nov. 10, 1911.)

APPEAL AND ERROR (§ 781*)—DECISIONS REVIEWABLE—MOOT CASE.

Where the vendors of land who were entitled to part of the crops as payment obtained an injunction restraining the buyers from interfering with their taking the crops, and the parties, before a decision upon the appeal from the order granting the injunction was had, entered into a stipulation whereby the crops were deposited with warehousemen to await result of litigation and the injunction

was superseded, the appeal will be dismissed, the case being wholly moot.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3122; Dec. Dig. § 781.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Suit by Henry S. Judson and another against C. R. and B. R. Bell. From an order granting an injunction in vacation, defendants appeal. Appeal dismissed.

W. S. Holman, for appellants. Linn Conger & Austin, for appellees.

REESE, J. This is an appeal from an order made in vacation granting a temporary injunction in a suit by Henry S. Judson and the Colonial Land Company against C. R. Bell and B. R. Bell, who prosecute this appeal.

The suit is pending in the district court of Matagorda county. The petition alleges, in substance, that Henry S. Judson is a resident citizen of the state of Illinois and the Colonial Land Company is a foreign corporation created under the laws of the state of Delaware, with its principal office in the city of Wilmington in said state, and a branch office in the city of Chicago; that on November 3. 1909, appellants and appellees entered into a contract in writing by the terms of which appellees agreed to convey to appellants certain lands in Matagorda county upon certain terms and conditions as follows: The consideration to be paid by appellants was $7,-362, payable in the following manner: One note for $1,350 payable May 3, 1910, the balance to be paid by the delivery fo appellees of two-fifths of the rice crop to be grown and harvested each year on the land to be conveyed, after deducting from such rice crop a sufficient portion thereof to pay the water rent, until the entire purchase price of the land, with interest, was paid, when a deed was to be executed. It was provided in the contract that until the full payment of said purchase price by the delivery of the said portion of the rice crop for each year, "the legal title and ownership of all the crops raised each year should remain the property of appellees."

It was alleged that possession of the premises had been delivered under said contract of sale; that the same had been planted in rice for the year 1911 by appellants, the crop amounting to 1,200 or 1,400 barrels, worth $6,223; that appellants had threshed and sold 451 sacks of the rice of the value of $1,337.94, being $683.94 in excess of the water rent, and that appellees' two-fifths of such excess is $273.57. It was alleged that appellants had failed and refused to deliver any portion of appellees' share of said rice crop, and had notified appellees that they proposed to hold all of their share to offset a claim of damages for an alleged breach of contract by appellees to water the crop on this and other lands of appellants; that appellees have no irrigation plant, made no such contract with appellants, whose contract for water was with the Gravity Irrigation Company, which is liable to appellants, if there is any such liability. It was further charged that appellants have refused to permit plaintiffs or any of their agents to enter upon said premises to check and receive their share of said rice or to give them any information with regard to the same. and are threatening to hold the same for their own use and benefit; that by the express stipulations of the contract it has become null and void, on account of the breach thereof by appellants, and all payments made thereon have become forfeited to appellees.

There was prayer for cancellation of the contract of sale, that appellees' title be quieted, and a judgment for possession of the land. There was also a prayer for a temporary writ of injunction as follows: "Plaintiffs pray that your honor grant them your most gracious writ of injunction, enjoining and restraining the defendants, their agents, servants, employés and attorneys from interfering with plaintiffs, in taking possession of their rices as the same is threshed, sacked and sewed by the defendants, and in removing said rices, or any part of said rice crop of 1911, from said premises, and in exercising all the powers of ownership thereof; and restraining the defendants, or either of them, their agents, servants, employés or attorneys from intimidating the servants, agents, or employés of the plaintiffs, and preventing them from entering upon the premises, for the purpose of taking possession of or removing from the premises the said rice owned by them and restraining the said defendants or either of them, their agents, servants, employés or attorneys from collecting the purchase price of the 451 sacks or barrels of rice sold and delivered by them to Bay City Rice Milling Company, of Bay City, Texas, but commanding the said defendants to deliver to the possession of these plaintiffs the account of sale properly assigned that the plaintiffs may collect the purchase price thereof." This petition was presented to the district judge in vacation in an application for the temporary writ, who on October 9, 1911, granted the writ as prayed for, fixing the injunction bond at $6,000, which was given and approved on October 12th. The record shows the issuance and service of the writ and also the following proceedings subsequent thereto:

On October 14th an order was made by the judge raising the amount of the injunction bond from $6,000 to $13,000 and setting the matter for hearing 10 days after service of the motion to dissolve. The record does not show that this bond was ever given. On October 16th, appellants filed a motion to dis-

solve the injunction on several grounds not necessary to set out here as the motion was never acted on. Notice of the motion was duly served on appellees on October 16th. On October 18th the parties to the litigation by their respective attorneys entered into the following agreement which was reduced to writing and executed by both parties: "Henry S. Judson et al. v. C. R. Bell and B. B. Bell. (No. 3,129.) In the District Court of Matagorda County, Texas. In vacation, 1911. The parties herein agree that pending a hearing in this cause the fiat of the judge and the writ of injunction granted, shall be modified as follows: Of the $1,162.94 retained by the Bay City Rice Milling Company, pending the litigation between the Gravity Irrigation & Power Company and these defendants, No. 3,130 on the docket of this court, $719.40 shall be placed in the First National Bank of Bay City, Texas, in trust to await the litigation in said cause, the sum of $249.40 shall be placed in the First National Bank, Bay City, Texas, to be ,held in trust to await the litigation in cause No. 3,129, the remainder of said sum shall be delivered by the Bay City Rice Milling Company to defendants. Two-fifths of the rice held under the writ of injunction in this cause shall be placed in trust in the Farmers' Rice Milling & Storage Company, for the benefit of the First National Bank as trustee, to await the termination of this suit; the remaining three-fifths shall be delivered by the plaintiffs and the Farmers' Rice Milling & Storage Company to defendants. The rice grown by the defendants shall be threshed by defendants, and two-fifths of same shall be delivered by defendants at the thresher to the Farmers' Rice Milling & Storage Company, for the First National Bank, trustee, to be hauled by defendants to Wadsworth, Texas, where it will then be transported to Bay City, and there placed in the warehouse of the Farmers' Rice Milling & Storage Company to be held in trust to await the termination of this suit, unless sold as hereinafter provided. Said rice shall be sold by the First National Bank, as trustee, not later than December 31, 1911, and if sold prior to that time shall be sold with the consent of the defendants, and shall be held by it in trust to await the action of the courts in this cause. This agreement shall be strictly construed, and shall not operate to the prejudice of the rights of either party in this litigation, but shall affect only the matters contained herein. This October 18, 1911."

On October 19th the district judge in chambers made the following order: "In Chambers. October 19th, 1911. It appearing to the court that the parties to the above cause have agreed upon the modification of the injunction heretofore rendered in this cause together with the modification heretofore entered by me on the 14th day of October, A. D. 1911, which agreed modification is contained in an agreement of the parties herein, and filed in this cause, on October 18th, A. D. 1911, by which three-fifths of the crop raised by defendants is relieved from the injunction, it is hereby ordered that the injunction heretofore entered in this cause and granted be modified in accordance with the terms of said agreement of the parties and as controlled by said agreement, that it be continued in full force for hearing thereon, at the regular term of the district court of Matagorda county, Texas, in January, 1911. Wells Thompson, Judge of the Twenty-Third Judicial District."

Other pleadings were filed, including supplemental petition and answer to the motion to dissolve and original answer of appellants to the petition, none of which are material to the disposition of this appeal. Appellees have presented in this court a motion to dismiss the appeal on the ground, among others, that the agreement of October 18th herein set out settles all matters involved in the injunction, and there is in fact now nothing to litigate about so far as the temporary injunction is concerned.

There can be no doubt that the agreement effectually settles and disposes of all matters involved in this appeal. The terms of the injunction are set out in the writ which follows substantially the prayer of the petition as above set out. The effect of it was to enjoin appellants from interfering with appellees in taking possession of their rice as the same is threshed, sacked, and sewed by appellants, and removing said rice crop of 1911, or any part thereof, from said premises, and exercising all the powers of ownership thereof, and to command appellants to desist and refrain from intimidating the servants, etc., of appellees, and preventing them from entering upon the premises and taking possession of and removing the rice, to refrain from collecting the purchase price of the 451 sacks of rice sold to the Bay City Rice Milling Company, and to deliver to appellees the account of sale of said rice in order that they may collect the money.

It is perfectly clear that the agreement settles all of these matters fully and effectually. By its terms, $719.40 of the purchase price of the 451 sacks of rice sold by appellants is to be placed in the First National Bank of Bay City to await the result of the litigation between appellants and the Irrigation Company then pending in another suit. Of the balance of said purchase money, $249.40 is placed in said bank to await the result of the litigation in this case, and the balance is to be paid over to appellants. Two-fifths of the rice crop is placed in trust with the Farmers' Rice Milling Company, for the benefit of the First National Bank, trustee, to await the termination of this suit, and the remaining three-fifths is delivered to appellants. Provision is made for threshing the rice and for the sale of the two-fifths and deposit of the proceeds.

The entire subject-matter of the injunction is disposed of by the agreement, and there is nothing left for it to act upon. The effect of the agreement is to destroy and render absolutely inoperative the writ of injunction. It can have no possible effect upon the rights of the parties whether the order of the judge granting the injunction is sustained or set aside. By the acts of the parties the writ has become functus officio. This was the condition before this appeal was prosecuted, and there was no possible occasion for the appeal except to get the opinion of this court upon certain purely abstract questions of law, the decision of which can have no effect on the rights of the parties on this appeal. All of these are shown by the record. In such case it is settled by the authorities that the appeal, or the case, will be dismissed. It is not necessary to burden this opinion with a discussion of these authorities, and we merely cite some of them which will settle the principle involved. California v. San Pablo & Tullave R. R. Co., 149 U. S. 308, 13 Sup. Ct. 876, 37 L. Ed. 747; Little v. Bowers, 134 U. S. 552, 10 Sup. Ct. 620, 33 L. Ed. 1016; La Costa v. Duffy, 49 Tex. 767, 30 Am. Rep. 122; Gordon v. State, 47 Tex. 208; Robinson v. State, 87 Tex. 565, 29 S. W. 649; S. W. Tel. Co. v. Galveston County, 59 S. W. 589.

The motion must be granted and the appeal dismissed, and it is so ordered.